IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MICHAEL J. WILSON-BEY,**

      Petitioner,

v.   Civil Action No. 2:11cv59
    (Judge Bailey)

**TERRY O'BRIEN, WARDEN,**
    Respondent.

## REPORT AND RECOMMENDATION

On August 8, 2011, the *pro se* petitioner, Michael J. Wilson-Bey, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The petitioner is an inmate at USP Hazelton, which is located in Bruceton Mills, West Virginia. In the petition, the petitioner challenges a decision of the United States Parole Commission (USPC). The undersigned conducted a preliminary review on September 26, 2011, and determined that summary dismissal was not appropriate at that time. Accordingly, a show cause order was entered. On October 24, 2011, the respondent filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. On October 25, 2011, a Roseboro Notice was issued. To date, the petition has made no reply. This matter, before the undersigned for

a Report and Recommendation pursuant to LR PL P 2, et seq., is ripe for review.

## I. FACTUAL AND PROCEDURAL HISTORY

The petitioner is a 61-year old career criminal. His criminal history date back to 1961, when he was eleven years old. His current incarceration stems from a life sentence imposed by the Superior Court for the District of Columbia on October 1, 1992.

Effective August 5, 1998, the petitioner was transferred to the jurisdiction of the U.S. Parole

Commission, pursuant to the National Capital Revitalization and Self-Government Act of 1997.[1]
The petitioner became parole eligible on his life sentence as of May 4, 2005. The Commission conducted a hearing October 25, 2004, and on October 2, 2004, denied parole and ordered a three-year set-off. (Dckt.# 16-1, p. 41). The petitioner's next parole hearing was August 29, 2007. On October 16, 2007, the Commission again denied parole and continued to a three-year reconsideration hearing. (Dckt. 16-1, p. 46). On January 11, 2010, the Commission conducted another parole hearing for the petitioner. Although the petitioner's rehearing grid score indicated that parole should be granted, the Commission declined to order his release in light of his repeated failure on parole, repetitive history of assaultive conduct, and multiple convictions for substantially similar conduct. The petitioner was been scheduled a for a reconsideration hearing in January 2015. (Dckt.# 16-1, p. 3).

## II. CONTENTIONS OF THE PARTIES

The petitioner argues that the USPC committed an *ex post facto* violation by applying the 2000 parole rules to his 1992 sentence instead of the 1987 rules during his 2004 and 2007 hearings. The petitioner also argues that the USPC violated parole determination criteria set forth in 18 U.S.C. § 4206(d) in denying him parole at his 2010 hearing. For relief, the petitioner seeks an order directing the respondent to release him "in a manner consistent with 1987 D.C. Board of Parole guidelines." (Dckt.# 1, p. 8).

---

[1]On August 5, 1998, the Commission obtained jurisdiction of D.C. Code offenders to grant and deny parole through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, §11231(a)(1), 111 Stat. 712, 745, D.C. Code §24-1231(a)("Revitalization Act."). See also Franklin v. District of Columbia, 163 F.3d 625, 632 (D.C. Cir.1998). Effective August 5, 2000, the Commission was given the responsibility of supervising parolees and revoking parole. §11231(a)(2) of the Act codified at D.C. Code §24-131(a)(2).

The respondent argues that the petitioner's claim for habeas relief fails because he does not state an *ex post facto* claim because the commission has not made a decision under a prior rule or increased his punishment. Moreover, the respondent argues that the petitioner's due process claim lacks merit because the Commission's decisions were discretionary decisions rationally supported by the record, and not an abuse of discretion. Finally, the respondent argues that 18 U.S.C. § 4206(d) does not apply to D.C. Code violators like the petitioner only to federal prisoners.

### III.  STANDARD OF REVIEW

**A.  Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952. The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In Twombly, the United States Supreme Court noted that a complaint

3

need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## IV.  DISCUSSION

Because the Constitution itself does not create any liberty interest in parole, such an interest must emanate from state law, or in this case, District of Columbia law. See Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979). Courts have consistently held that the D.C. parole statute, which applies to D.C. Code offenders even after they were transferred to the jurisdiction of the Commission, does not create any liberty interest in parole. See, *e.g.*, McRae v. Hyman, 667 A.2d 1356 (D.C. 1995) (The District's parole scheme confers discretion to grant or deny parole and the scoring system creates no liberty interest overriding the exercise of that discretion); Ellis v. District of Columbia, 84 F.3d 1413 (D.C.Cir. 1996) (D.C. parole statute and regulations do not create any

5

liberty interest in parole.)  Furthermore, Congress committed decisions to grant or deny parole to the absolute, unreviewable discretion of the Commission.  Garcia v. Neagle, 660 F.2d 983, 988 (4th Cir. 1981).  Parole decisions are therefore not subject to arbitrary and capricious or abuse of discretion review under the provisions of the Administrative Procedures Act, 5 U.S.C. § 701(a)(2).  Rather, judicial review is limited to a consideration of whether the Commission "exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations.  Garcia at 988; see also Fardella v. Garrison, 698 F.2d 208, 210 (4th Cir. 1982).

Accordingly, the Commission's exercise of its discretion in denying the petitioner parole and departing from the guidelines is unreviewable, and thus this Court is "without power to engage in judicial review of the Commission's substantive decision" to deny him parole, Garcia at 988.  In other words, the substance or merits of the parole decision concerning the petitioner are beyond judicial review.  However, the petitioner's claims must still be analyzed to determine whether they may be read as claiming that the Commission acted without authority, unconstitutionally, or in contravention of its own regulations.

**A. 1987 Regulations**

In 1997, Congress overhauled the District of Columbia's government, including the parole system through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, §11231(a)(1), 111 Stat. 712, 745, D.C. Code §24-1231(a)("Revitalization Act."). Effective August 5, 1998, the D.C. Board was abolished, and its jurisdiction over parole decisions for D.C.Code violators was transferred to the USPC.  Upon assuming the D.C. Board's jurisdiction, the USPC began a process of revising the regulations for determining D.C.Code offenders' suitability for parole.  See Sellmon, 551 F.Supp.2d at 72-73 (discussing revisions). The

revisions were codified at 28 C.F.R. §§ 2.70-2.107 in 2000 (2000 Regulations). The 2000 Regulations specify that they are applicable to a D.C.Code offender, such as the petitioner, whose first parole hearing would occur after August 5, 1998. See 28 C.F.R. § 2.80(a)(5). The changes incorporated in the 2000 Regulations are broad and arguably could pose a significant risk of a longer period of incarceration than under the earlier 1987 Regulations.

"The 1987 Regulations were adopted to 'structure the exercise of the paroling authority's discretion' and to promote 'increased consistency in parole release decisions and enhanced accountability of the Board' by making '**explicit** those factors that will be considered in each case." Sellmon at 554, *quoting* Report on the Development of the Paroling Policy Guidelines for the District of Columbia Board of Parole (emphasis in original). Under the 1987 Regulations, after serving his minimum sentence, a D.C.Code offender became eligible for parole.[2] The D.C. Parole Board would then determine the prisoner's suitability for parole by calculating a total point score (TPS) which ranges from 1 to 5. Based on the TPS score, the 1987 regulations lead to one of two outcomes: "parole shall be granted" or "parole shall be denied. D.C. Mun. Regs. Tit. 28, §§ 204.19-.22 (1987) (repealed 2000). At an initial parole hearing, a prisoner with 0, 1, or 2 points "shall be" granted parole with varying degrees of supervision. Id. at § 204.19. For a prisoner with 3, 4, or 5 points, "[p]arole shall be denied at initial hearing and hearing rescheduled." Id. However, regardless of whether the 1987 Regulations indicated that a prisoner's parole should be granted or denied, the D.C. Board retained the discretion to reach a different decision if merited by "unusual

---

[2]"[T]he justice or judge of the court imposing [a felony' sentence shall sentence the person for a maximum period not exceeding the maximum fixed by law, and for a minimum period not exceeding one-third of the maximum sentence imposed, and any person so convicted and sentenced may be released on parole...at any time after having served the minimum sentence. " D.C. Code § 24-403 (2001).

circumstances." Id. at § 204.22.

## B. The 2000 Regulations

Between 1998 and 2000, the USPC drafted new parole regulations and guidelines that it applied to any offender who received an initial parole hearing after August 5, 1998. See Sellmon 551 F.Supp.2d at 73. The USPC justified its revisions by explaining that its research demonstrated that "[t]he point score system used by the D.C. Board of Parole ha[d] resulted in a high rate of upward departures from the guidelines based upon factors that should be included in the guidelines...." 63 Fed.Reg. 17771, 17772 (Apr. 10, 1998).

The 2000 Regulations establish the process the USPC follows to calculate the number of months a prisoner should serve in custody before he is suitable for parole. This multi-step process results in what is called the Total Guidelines Range, which is the "amount of time [a prisoner] may expect to serve with continued good conduct and ordinary program achievement." 65 Fed. Reg. 0663, 70664 (November 27, 2000). Until the prisoner has served a period of time equal to the bottom of his total guideline range, he is presumed to be unsuitable for parole. See 28 C.F.R. §§ 2.80(h), (I), & (f). Like the 1987 Regulations, the 2000 Regulations permit the USPC to deny parole to a prisoner who is presumptively eligible under "unusual circumstances." The 2000 Regulations provide examples of "unusual circumstances" but do not limit the discretion of the USPC to depart on any basis that it classified as "unusual" except that it cannot have been "fully taken into account in the guidelines." 28 C.F.R. § 2.80(n).

## V. ANALYSIS

As previously noted, the petitioner alleges that the USPC violated his rights under the *Ex Post Facto* Clause of the United States Constitution by using the 2000 Regulations rather than the

8

1987 Regulations. In addition, the petitioner also argues that the USPC violated parole determination criteria set forth in 18 U.S.C. § 4206(d) in denying him parole at his 2010 hearing

    1. <u>Ex Post Facto Clause</u>

The Ex Post Facto Clause "forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time committed; or imposes additional punishment to that then prescribed." <u>Weaver v. Graham</u>, 450 U.S. 24, 28 (1981) (internal quotations omitted). The central concerns of this provision are "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." <u>Id.</u> at 30. "To fall within the ex post facto prohibition, a law must be retrospective – that is, it must apply to events occurring before its enactment – and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." <u>Lynce v. Mathis</u>, 519 U.S. 433, 441 (1997).

In this particular case, it is clear that the crime for which the petitioner is incarcerated was committed prior to the adoption of the 2000 Regulations. It is equally clear that the USPC utilized the 2000 regulations in 2004 and 2007, when it denied the petitioner parole. Moreover, it appears that the USPC's actions may have created a significant risk of an increased period of incarceration. When applied to the petitioner's circumstances, the 1987 Regulations indicate that parole "shall be granted."[3] However, even if the petitioner has established an ex post facto violation, the petitioner is not entitled to an order granting him release on parole. At best, he would be entitled to a new parole hearing with instructions to the USPC to apply the 1987 Regulations. Moreover, it is clear that the petitioner has already received this precise relief.

---

    [3]This apparently mandatory language is misleading because the D.C. Board was given discretion to depart from the parole decision suggested by a strict application of the regulations.

A careful review of the petitioner's Notice of Action, dated January March 23, 2010, establishes that it was conducted pursuant to the 1987 Regulations. The petitioner's Grid Score was 1, which suggested that parole be granted with the Highest Level of Supervision. (Doc. 16-1. p. 51). However, the hearing examiner noted that "[a] departure from the guidelines at this consideration is warranted because the Commission find there is a reasonable probability that you would not obey the law if released and your release would endanger the public safety." Accordingly, the hearing examiner recommended that the petitioner be denied parole, and further, that his rehearing date be scheduled beyond the guidelines range of 12 months. The Commission adopted the hearing examiner's recommendations and continued the petitioner to a reconsideration hearing in January 2015, after the service of an additional 60 months. In reaching this decision, the Commission stated:

> You have a total point score of 1 under the 1987 Board guidelines for D.C. Code offenders. The guidelines indicate that parole should be granted at this time. However, a departure from the guidelines at this consideration is found warranted because the Commission finds there is a reasonable probability that you would not obey the law if released and your release would endanger the public safety. You are a more serious parole risk than shown by your point score because you have a history of repeated failure under parole supervision, you have a history of ongoing criminal behavior that consists of poor community adjustment as evidenced by your failure to be free of criminal activity over sustained periods of time and a criminal record with the current conviction is at least the fourth conviction for substantially similar offenses. Additionally, you have a repetitive history of assaultive criminal behavior. Specifically, you were paroled by the DC Board in 1978 for a sentence that included 2 separate counts of Robbery and Armed Robbery, Assault with a Deadly Weapon, and Carrying a Dangerous Weapon (Gun). Your parole followed your return to custody after he escaped while on a Christmas furlough in 1972, and had not been apprehended until your arrest for Unauthorized use of a Vehicle in August, 1974. Your parole was revoked in 1981 for charges that included Possessing a Gun. You were re-paroled on 9/3/1982 and you were arrested 3 months later in December, 1982 in Prince George's County, Maryland for Carrying a Pistol without a License, released on bond, and arrested one month later on 1/10/1983 in Montgomery County, Maryland for Armed Robbery, Bank Robbery and Carrying a Pistol

>without a License. You ultimately received a 30 year sentence in the State of Maryland, which was subsequently reduced to 20 years and expired in 2008. The DC Board of Parole issued a detainer warrant, and by Notice of Board Ordered date 4/2/1991 revoked your parole. The Board re-paroled you on 7/10/192, and literally two days later, you committed the instant offense of conviction which included Armed Robbery and Assault on a Police Officer during which you fired 2 shots at pursuing officers. Furthermore the commission finds that there is no relationship between your positive institutional adjustment and your likelihood to remain crime free in the community, based on your history a very positive institutional adjustment Follow by your commission of new crimes of violence in the community shortly after or immediately following your release on parole.

(Dckt.# 16-1, p.3).

The D.C. Board was given vast discretion to depart from the parole decision suggested by a strict application of the regulations. See 1987 Regs. § 204.22; see also Ellis v. District of Columbia, 84 F.3d 1413, 1418-20 (D.C. Cir. 1986) (holding that the 1987 Regulations do not create a liberty interest for prisoners who are found to be presumptively suitable for parole). "The USPC would have no less discretion when applying the 1987 Regulations; it could faithfully apply the 1987 Regulations to [the] [p]etitioner's parole request and exercise its discretion to deny parole." Taylor v. Craig, No. 05-781, 2009 WL 900048, p. 13 (S.D.W.V. March 24, 2009). Accordingly, "the calculations done under the regulations are intended to 'enable the Board to **exercise its discretion** when, and only when, release is not incompatible with the safety of the community.' §04.3" Ellis, 84 F.3d at 1418 (emphasis in the original). Furthermore, "the regulations explicitly authorize the Board [and by succession, the USPC] to disregard the numerical guidelines simply by referring to 'the specific aggravating or mitigating factors as stated in Appendices 2-1 and 2-1.'§ 204.1" Id. Among the factors listed in the Appendices are "Other" and "Other change in circumstances." App. 2-1, at 2-35; App. 2-2, at 2-38. "Under § 204.22 of the regulations, if the Board [and by succession, the USPC] wished to disregard the results of the scoring system it merely had to say so in writing."

McRae v. Hyman, 667 A.2d 1356, 1361 (D.C. 1995).

Here, the USPC chose to disregard the scoring system and deny parole. In doing so, it made a specific finding that there was a reasonable probability that the petitioner would not obey the law if released and posed a more serious parole risk than shown by his point score. In addition, the USPC noted the petitioner's extensive history of committing crimes of violence shortly after or immediately following his release on parole. Accordingly, the USPC set forth specific reasons for denying the petitioner his presumptive parole eligibility, and its decision is not subject to review.

    2. 18 U.SC. § 4206(d)

Section 4206 (d) Is a federal statute that applies only to prisoners incarcerated under federal law. 18 U.S.C. § 4201 ("As used in this chapter – (4) "Eligible Prisoner") quote means any Federal prisoner who is eligible for parole ..."). *Cf.* 28 C.F.R. § 2.53 (mandatory parole under section 4206 authorized only in administrative code provision governing parole commission oversight over federal prisoners).

The crimes for which the petitioner is incarcerated or all offenses under the criminal code of the District of Columbia. Therefore, he is not a federal prisoner and is not eligible for release under the provisions of section 4206.

## VI. RECOMMENDATION.

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc.15) be **GRANTED** and petitioner's §2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE**

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the

Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last know address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: 2/27/2012

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE